**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>American Physician Partners, LLC<br><br>Debtor. | Chapter 11<br><br>Case No. 23-11469 (BLS) |
| Pirinate Consulting Group,<br>as Liquidating Trustee of the American Physician Partners Liquidating Trust,<br><br>Plaintiff,<br>v.<br><br>John Rutledge and<br>Bob Newport,<br><br>Defendants. | Adv. Pro. No. 25-52348 (BLS) |

**OPINION**

On September 17, 2025, Pirinate Consulting Group ("Plaintiff"), in its capacity as the liquidating trustee of the American Physician Partners Liquidating Trust, initiated this adversary proceeding by filing a Complaint for Damages and Other Relief (the "Complaint")[1] against John Rutledge ("Rutledge") and Bob Newport ("Newport", and together with Rutledge, the "Defendants"). The Complaint sets forth five causes of action, four of which are alleged against Defendant Newport. The Counts alleged against Newport include a claim for breach of fiduciary

[1] Adv. D.I. 1. All references to "Adv. D. I." refer to docket items in the instant adversary proceeding, Adv. Pro. No. 25-52348 (BLS). References to "D.I." refer to docket items in the main, jointly-administered case, Case No. 23-11469 (BLS).

duties (Count II), a claim for avoidance of fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(A) (Count III), a claim for avoidance of fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B) (Count IV), and a claim for recovery of fraudulent transfers pursuant 11 U.S.C. § 550 (Count V). Newport has filed a Motion to Dismiss Counts II and III of the Complaint.[2] For the reasons that follow, Newport's Motion to Dismiss will be granted as to Counts II and III.

**BACKGROUND**

This adversary proceeding stems from the voluntary Chapter 11 petition filed by American Physicians Partners, LLC (the "Debtor" or "APP" and, collectively with its affiliated debtors, the "Debtors") on September 18, 2023.[3] According to the Complaint, the Defendants co-founded APP in 2015.[4] From APP's founding and until his resignation in June 2022, Newport served as the company's chief financial officer ("CFO").[5]

The Complaint alleges that APP had been experiencing cash flow issues prior to its bankruptcy filing that were subsequently exacerbated by a new federal statute, the No Surprises Act ("NSA"), which went into effect on January 1, 2022.[6] The NSA required out-of-network claims to be submitted to a new arbitration portal, which drastically delayed APP's receipt of payments and resulted in a liquidity crunch for APP.[7] The Complaint further alleges that, at the conclusion of 2021, "APP made the decision not to pay certain discretionary bonuses" based upon EBITDA calculations for fiscal year 2021.[8] Despite APP's financial struggles, the

[2] Adv. D.I. 15, 16. Newport has also moved to dismiss Count V to the extent it is based on Count III.
[3] D.I. 1.
[4] Adv. D.I. 1 ¶ 2.
[5] *Id.* ¶ 3.
[6] *Id.* ¶ 28.
[7] *Id.*
[8] *Id.* ¶ 27.

Complaint alleges that Rutledge, as APP's president and chief executive officer, made the decision to reverse course and pay out bonuses for fiscal year 2021.[9]

The Complaint alleges that Newport acquiesced to the wishes of Rutledge to pay the discretionary corporate bonuses to officers and managers, including to Rutledge and Newport themselves.[10] For the 2021 fiscal year, APP paid discretionary bonuses from May 2022 through October 2022 in an amount totaling approximately $3.2 million.[11] Of this $3.2 million, the Complaint states that $445,000 was paid to Rutledge and $217,000 was paid to Newport.[12]

The Complaint additionally alleges that Rutledge and Newport entered into a consulting arrangement under which APP made monthly payments to Newport after his resignation as CFO.[13] This arrangement resulted in APP paying, and Newport receiving, four payments of $15,000 from July 2022 through October 2022.[14] The Complaint alleges that Newport never actually provided consulting services to APP.[15] Payments under the consulting arrangement were terminated in October 2022 once Brown Brothers Harriman Capital Partners ("BBH"), the majority owner of APP, discovered its existence and caused APP's board of managers to stop making the payments.[16]

## <u>JURISDICTION AND VENUE</u>

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, as well as the *Amended Standing Order of Reference* from the United States District Court for the

---

[9] *Id.* ¶ 32.
[10] *Id.* ¶¶ 3,39.
[11] *Id.* ¶ 38.
[12] *Id.* ¶ 39.
[13] *Id.* ¶ 4.
[14] *Id.* ¶ 45.
[15] *Id.* ¶ 44
[16] *Id.*

District of Delaware, dated February 29, 2012. Venue is proper in this Court pursuant to 28 U.S.C. § 1409. This is a "core proceeding" under 28 U.S.C. § 157(b)(2).

## STANDARD OF REVIEW

Defendant Newport has moved to dismiss certain Counts of the Complaint under Fed. R. Civ. P. 12(b)(6) (made applicable though Fed. R. Bankr. P. 7012) for failure to state a claim upon which relief can be granted. When deciding motions to dismiss under Rule 12(b)(6), the Court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[17]

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court instructed that to satisfy Rule 8(a)(2) a pleading must nudge claims "across the line from conceivable to plausible."[18] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] However, the Court need not and should not accept legal conclusions proffered as factual allegations.[20] Likewise, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient.[21]

---

[17] *Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*, 879 F.3d 79, 83 n.6 (3d Cir. 2018).
[18] *Ashcroft v. Iqba*l, 556 U.S. 662, 680 (2009) (citing *Bell Atlantic Corp. v. Twombl*y, 550 U.S. 544, 570 (2007)).
[19] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).
[20] *See Twombly*, 550 U.S. at 555; *Santiago v. Warminster Twp*., 629 F.3d 121, 130 (3d Cir. 2010) ("we disregard legal conclusions and 'recitals of the elements of a cause of action, supported by mere conclusory statements.'").
[21] *Giuliano v. Haskett (In re MCG Ltd. P'ship)*, 545 B.R. 74, 82 (Bankr. D. Del 2016). Conclusory allegations and bare legal conclusions receive no presumption of truth under *Iqbal* and *Twombly* and are "affirmatively disregard[ed]" by the district courts when passing on a motion to dismiss. *Connelly v. Lane Const. Corp.,* 809 F.3d 780, 790 (3d Cir. 2016); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.").

To determine whether a claim meets the *Twombly/Iqbal* standard of pleading, a court must draw on its judicial experience and common sense.[22] The Third Circuit follows a three-step process to determine the sufficiency of a complaint:

> First, the court must "take note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[23]

The movant bears the burden of showing that the dismissal is appropriate under Rule 12(b)(6).[24]

For claims based on alleged fraud, Rule 9(b)'s more rigorous particularity standard applies. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[25] Rule 9(b) is designed to provide notice of the precise misconduct with which defendants are charged and prevent false charges.[26] "Broad statements" and "generic references" to some fraud will not suffice because Rule 9(b) requires particularity for fraud claims to survive a motion to dismiss.[27] Satisfactory pleading will identify the who, what, when, where, and how of the "circumstances" surrounding the alleged fraud.[28]

---

[22] "[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Zohar III, Corp*., 639 B.R. 73, 90 (Bankr. D. Del.), *aff'd*, 620 F. Supp. 3d 147 (D. Del. 2022), *appeal dismissed sub nom. In re Zohar III, Corp.* (3d Cir. Nov. 10, 2022) (quoting *In re Livent, Inc. Noteholders Sec. Litig.,* 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001)).
[23] *Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago*, 629 F.3d at 121, 130).
[24] *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d 404, 408 (D. Del. 2007).
[25] Fed. R. Civ. P. 9(b).
[26] *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp*., 742 F.2d 786, 791 (3d Cir. 1984).
[27] *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).
[28] *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *Bigband Networks, Inc. v. Imagine Communications, Inc.*, No. 07-351-JJF, 2010 WL 2898286, at *3 (D. Del. July 20, 2010).

## DISCUSSION

Newport has moved to dismiss Counts II and III, as well as Count V, to the extent it is based upon Count III. The Court will address the arguments in turn.

### A. Count II: Breach of Fiduciary Duties

Count II alleges that Newport breached fiduciary duties he owed to APP, including the duties of care, loyalty, and good faith. This claim is based on two separate acts, which will be addressed separately: (1) payment of the corporate bonuses described above, and (2) receipt of funds under an allegedly bogus consulting agreement.

#### 1. Payment of Corporate Bonuses

First, the Complaint alleges that Newport breached fiduciary duties he owed to APP by assisting Rutledge in causing APP to pay corporate bonuses at a time when APP was experiencing considerable financial difficulty.[29] As the company's CFO, Newport's responsibilities are alleged to have included oversight of financial reporting, compliance reporting, accounting, budgeting, and financial planning.[30] Plaintiff contends that among these responsibilities, Newport was specifically responsible for directing APP's payroll director to execute any special payments, such as bonuses.[31] And as CFO, Newport was, or should have been, intimately familiar with APP's financial condition.[32] Accordingly, the Complaint contends that he knew or should have known that paying the bonuses at issue was neither appropriate nor wise, and he should not have followed Rutledge's direction to do so.

---

[29] Adv. D.I. 1 ¶¶ 35, 37.
[30] *Id.* ¶ 79.
[31] *Id.* ¶ 37.
[32] *See id.* ¶ 80.

Newport responds that the Complaint lacks specific allegations showing that the payment of corporate bonuses resulted from any decision Newport made or that he was involved in.[33] Rather, Newport stresses that the Complaint itself acknowledges that Rutledge (as CEO) made the decision to pay the bonuses.[34] Then, Newport turns to explaining the deficiencies of Plaintiff's claims as they relate to each of the duties of care, loyalty, and good faith.[35]

**i. Duty of Care**

To state a claim for breach of the duty of care, a plaintiff must allege facts showing that the officers and/or directors acted with gross negligence.[36] Under Delaware law, gross negligence is "an extreme departure from the ordinary standard of care."[37] To establish gross negligence, a plaintiff must plead facts showing a defendant's conduct was recklessly uninformed or outside the bounds of reason.[38]

In support of its breach of the duty of care claim, Plaintiff lays out various facts which it contends should have been considered by Newport before implementing the bonus payments that were ordered by Rutledge. As noted above, the facts alleged in the Complaint indicate that APP was facing significant cash flow issues in 2022, and the bonus payments otherwise due were originally not going to be made because of those liquidity concerns. The Complaint further alleges that the decision to change course and make the bonus payments occurred without approval of the board of managers, and was based upon faulty 2021 EBITDA calculations that

---

[33] Adv. D.I. 16.
[34] *Id.*
[35] *Id.*
[36] *Albert v. Alex. Brown Management Services, Inc.*, C.A. No. 762-N, C.A. No. 763-N, 2005 WL 2130607, at *4 (Del. Ch. Aug. 26, 2005).
[37] *Browne v. Robb*, 583 A.2d 949, 953 (Del. 1999).
[38] *See In re McDonald's Corp. S'holder Derivative Litig.*, 289 A.3d 343, 372 (Del. Ch. 2023).

were subsequently adjusted down significantly to more accurately reflect the company's actual financial performance.[39]

Newport contends that Plaintiff's claims fail because the Complaint "contains no factual allegations at all about what Newport knew, did not know, or ignored."[40] The facts provided merely reveal what happened to APP, not whether or how Newport may have been involved. And he stresses that the Complaint affirmatively states that payment of the bonuses was the result of Rutledge's "unilateral decision," not any act or decision by Newport.[41]

The Court agrees with Defendant Newport. Based upon the allegations in the Complaint, all the Court can conclude is that paying the corporate bonuses may have been a poor decision. But it was a decision affirmatively alleged by the Plaintiff to have been made by Rutledge, not by Newport. Without allegations specifically identifying Newport's involvement or alleging gross negligence on his part, the claim for the breach of the duty of care must be dismissed.

**ii. Duty of Loyalty**

Under Delaware law, the duty of loyalty requires a director or officer of a corporation to put the best interest of the corporation and its shareholders over his own personal interests.[42] To state a claim for breach of the duty of loyalty, a plaintiff must "allege facts showing that a self-interested transaction occurred, and that the transaction was unfair to the plaintiffs."[43] When a director or officer "receives a substantial benefit from supporting a transaction[, he] cannot be objectively viewed as disinterested or independent."[44]

---

[39] Adv. D.I. 1 ¶¶ 28, 34, 42, 43.
[40] Adv. D.I. 21.
[41] Adv. D.I. 1 ¶ 35.
[42] *In re Fedders N. Am., Inc.*, 405 B.R. 527, 540 (Bankr. D. Del. 2009).
[43] *Id*.
[44] *Cede & Co. v. Technicolor, Inc*., 634 A.2d 345, 362 (Del. 1993), *modified on reargument*, 636 A.2d 956 (Del. 1994).

Plaintiff supports its breach of duty of loyalty claim by arguing that Newport knew or should have known that the payments of bonuses would be detrimental to APP and that he decided to implement Rutledge's directive regardless of this. Additionally, Plaintiff notes that Newport stood to benefit from payment of the corporate bonuses because he was among the individuals slated to receive a bonus payment.

Newport responds by emphasizing that the decision to pay corporate bonuses is alleged in the Complaint to have been exclusively made by Rutledge in his capacity as CEO. Further, many of the payments were made after Newport's resignation, when he no longer owed fiduciary duties to APP. Newport also argues that there are insufficient factual allegations in the Complaint regarding Newport's financial circumstances to prove that the alleged bonus payments would confer upon him a substantial economic benefit. To support this proposition, Newport relies upon *In re Essar Steel Minnesota LLC* and *In re OPP Liquidating Co., Inc*.

In *Essar Steel*, a litigation trustee brought breach of fiduciary duty claims against the CEO and CFO of the debtor.[45] As to the CEO, the trustee alleged that he breached his fiduciary duty of loyalty when he authorized certain transfers to debtor affiliates in exchange for the payment of millions of dollars to himself.[46] This court found that the trustee failed to sufficiently allege that the CEO engaged in a self-interested transaction because the large payment he received could have been his ordinary salary.[47] "At a minimum, there must be some suggestion that the director gained a benefit from the transaction that was over and above the salary he or she would have been entitled to anyway."[48]

---

[45] *In re Essar Steel Minnesota LLC*, Case No. 16-11626 (BLS), 2019 WL 2246712, at *3 (Bankr. D. Del. May 23, 2019).
[46] *Id*. at *6.
[47] *Id*.
[48] *Id*. at *7.

In *OPP Liquidating Co.*, the liquidating trustee brought breach of fiduciary duty claims against certain directors based on their approval of an ill-advised business expansion plan as well as their receipt of large compensation packages.[49] However, the trustee failed to allege that the directors received these large compensation packages because they approved the expansion plan that was recommended by management.[50] The court determined that the duty of loyalty claim failed because it lacked "a causal link between the payment and the actions taken in violation of the defendant's fiduciary duty."[51]

Plaintiff's duty of loyalty claim still fails for the same reason as its duty of care claim: the Complaint fails to allege any action actually taken by Newport. Even though Newport may have stood to benefit personally from payment of the corporate bonuses because he was one of the recipients,[52] the Complaint is abundantly clear that payment of the corporate bonuses was the "unilateral decision" of Rutledge. Therefore, the Complaint fails to state a claim for the breach of the duty of loyalty based on the receipt of the bonuses approved and directed by Rutledge.

**iii. Duty of Good Faith**

Claims for breach of the duty to act in good faith can be viewed as a permutation of claims for breach of the duty of loyalty and may be brought when "directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities."[53]

---

[49] *In re OPP Liquidating Co., Inc.*, Case No. 19-10729 (MFW), 2022 WL 774063, at *9 (Bankr. D. Del. Mar. 14, 2022).
[50] *Id.*
[51] *Id.*
[52] Newport also contests whether his receipt of the bonus payments was a "material" benefit. Newport correctly contends, and Plaintiff concedes, that the breach of fiduciary duty claim can only extend to those payments that were received while Newport was still employed by the company. Because Newport's resignation went effective on June 30, 2022, the claim only applies to those bonus payments made on May 3, 2022, and June 2, 2022. In total, Newport received $217,000, across six payments from May 2022 to October 2022. However, the Complaint does not identify what portion of that total was received prior to Newport's resignation. The Court need not reach the question of whether the amount received was a "material benefit" because no action by Newport has been alleged.
[53] *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 564 (Bankr. D. Del. 2008).

When pleading breach of the duty of good faith, a "plaintiff must allege 'conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a violation of the fiduciary duty of care (i.e., gross negligence).'"[54]

Again, the Complaint lacks factual support for Plaintiff's breach of fiduciary duty claim. Without the necessary allegations of decisions made or actions taken by Newport, the Complaint fails to state a claim for breach of the fiduciary duty of good faith.

**2. Payments Under the Consulting Agreement**

Next, the Complaint alleges that Newport breached fiduciary duties owed to APP by entering into a consulting agreement under which he would be paid $15,000 per month for six months after his resignation from the company.[55] Unlike Plaintiff's claim based on payment of corporate bonuses, which is limited to those payments that were received prior to Newport's resignation, this claim is based only on payments received after Newport's resignation from the company. To state a claim for breach of fiduciary duties, the Complaint must allege conduct by Newport while he was still employed by the Debtor that caused the harm that ultimately occurred after his resignation.

The Complaint fails to do so. Although the Complaint states that no consulting services were ultimately provided by Newport and labels the agreement as "bogus" because of this, the allegations in the Complaint do not reveal that Newport breached fiduciary duties while he was still at the company. The Complaint lacks any allegations showing that the consulting agreement was fraudulent from its inception, and merely labeling it as such is insufficient. Additionally, like the other causes of action discussed above, the Complaint again states that creation of the consulting agreement was Rutledge's unilateral decision; other references to Newport's

---

[54] *OPP*, 2022 WL 774063 at *10 (quoting *Stone v. Ritter*, 911 A.2d 362, 369 (Del. 2006)).
[55] Adv. D.I. 1 ¶ 82.

involvement are vague at best. For example, the Complaint alleges that Rutledge "create[d] a made-up consulting fee arrangement for Newport,"[56] "advised APP's human resources department to enter into a consultancy agreement with Newport,"[57] and "caus[ed] APP to make monthly payments to Newport for his purported consulting services."[58] As to Newport, the Complaint alleges that "Rutledge and Newport came up with a made-up 'consulting agreement'"[59] and that he "enter[ed] into a bogus consulting agreement with APP."[60] While the Complaint details specific actions taken by Rutledge, all it really provides as to Newport is that he was a party to the consulting agreement and that he could have been involved in negotiating the agreement. These allegations are insufficient. Accordingly, the Complaint also fails to state a claim for breach of fiduciary duties based upon the consulting agreement.

As a result, the Court grants Newport's Motion to Dismiss as to Count II.

**B. Count III: Avoidance of Fraudulent Transfers Pursuant to 11 U.S.C. § 548(a)(1)(A)**

Count III seeks to avoid the $60,000 in payments received by Newport based upon a consulting agreement between Newport and APP. The Complaint alleges that APP received no benefit in return for the $60,000 that Newport received.[61]

Under 11 U.S.C. § 548(a)(1)(A),

> (1) [t]he trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> > (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted[.]

---

[56] *Id.* ¶ 46.
[57] *Id.* ¶ 31.
[58] *Id.* ¶ 72.
[59] *Id.* ¶ 4.
[60] *Id.* ¶ 82.
[61] *Id.* ¶ 92.

Newport contests only whether the consulting payments were made with "actual intent to hinder, delay, or defraud[.]"

As discussed above, the heightened Rule 9(b) pleading standard applies to allegations of fraud. However, Rule 9's requirements may be relaxed for trustees in the bankruptcy context because "generally the trustee is an outsider without access to the facts necessary to articulate the details of a fraud."[62] And, "[b]ecause direct evidence of fraudulent intent is difficult to prove, a plaintiff can sufficiently plead fraudulent intent by alleging certain 'badges of fraud,' including '(1) the relationship between the debtor and the transferee; (2) consideration for the conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control or dominion by the debtor over the property transferred; and (6) secrecy or concealment of the transaction.'"[63] In assessing the badges of fraud, "[t]he presence or absence of any single badge of fraud is not conclusive[]", and the "court may consider other factors relevant to the transaction."[64]

Here, the Plaintiff asserts that it has identified three of the six badges of fraud and additionally urges that the facts alleged in the Complaint show fraudulent intent in and of themselves.[65] The badges of fraud that Plaintiff alleges are present are a relationship between the Debtor and transferee, a lack of consideration for the transfer, and concealment of the transfer from the board of managers.[66]

Even accepting these facts as true, the Plaintiff fails to show that the consulting payments were made with fraudulent intent. Plaintiff has correctly identified that a relationship exists

---

[62] *OPP*, 2022 WL 774063 at *3.
[63] *Zazzali v. Mott (In re DBSI, Inc.)*, 445 B.R. 344, 348 (Bankr. D. Del. 2011) (quoting *Official Committee of Unsecured Creditors of Fedders North America, Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders North America, Inc.)*, 405 B.R. 527, 545 (Bankr. D. Del. 2009)).
[64] *In re PennySaver USA Publishing, LLC*, 602 B.R. 256, 271 (Bankr. D. Del. 2019).
[65] Adv D.I. 20.
[66] *Id*.

between the Debtor and transferee but nothing about that relationship suggests fraudulent intent. It is hardly uncommon for executives to enter into such post-employment arrangements. Although Plaintiff claims the consulting arrangement was concealed, the Complaint acknowledges that the consulting arrangement was discussed with the company's HR department and was approved by Mr. Rutledge.[67] This disclosure seriously undermines Plaintiff's claim that the transaction was kept secret.

As a result, the Court concludes that the Complaint fails to allege sufficient facts regarding the consulting payments to support a cause of action for fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(A). The Court grants Newport's motion to dismiss as to Count III.

**C. Count V: Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. § 550**

Because Plaintiff fails to state a claim for fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(A), Count V is dismissed to the extent it is based on that claim. Plaintiff's 11 U.S.C. § 548(a)(1)(B) claim is not being dismissed, so Count V is not dismissed in its entirety.

## CONCLUSION

For the reasons stated above, the Court will grant Defendant Newport's Motion to Dismiss as to Counts II and III.

Dated: August 17, 2026
Wilmington, Delaware

BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

[67] Adv D.I. 1 ¶ 31.